JOHN F. KOLENBERG *v.* BOARD OF EDUCATION
OF THE CITY OF STAMFORD ET AL.
(13137)

PETERS, C. J., HEALEY, SHEA, COVELLO and HULL, Js.

Argued November 6, 1987—decision released January 26, 1988

*Marshall Goldberg,* for the appellant (plaintiff).

*Paul W. Orth,* with whom, on the brief, was *Joan C. Harrington,* for the appellees (defendants).

HULL, J. The plaintiff, John F. Kolenberg, appeals from a decision of the trial court rejecting the report of an attorney state trial referee, revoking the reference and rendering judgment for the defendants.

The following facts are undisputed. The plaintiff was employed by the defendant, the board of education of the city of Stamford (board), as a mathematics teacher from April, 1974, to June, 1977. He was awarded tenure in March, 1977. In June, 1977, he requested a leave of absence for the 1977–78 school year. This request was granted. At the end of April, 1978, the plaintiff notified the board of his intention to return to work in September, 1978. The assistant superintendent of the board advised the plaintiff that, under the collec-

tive bargaining agreement between the board and the plaintiff's union, notification of his intention to return to work was required by February 1, 1978,[1] and that, as a consequence of the plaintiff's failure to meet that deadline, he had lost his entitlement to reemployment. The plaintiff's teaching position was still vacant at this juncture. Throughout the summer of 1978 and thereafter, the plaintiff sought reinstatement and reemployment for all positions for which he was certified, but was unsuccessful.

In October, 1978, the plaintiff brought this action against the board, the city of Stamford, Robert W. Peebles, superintendent of schools, and James J. Morris, assistant superintendent of personnel. The first count alleged that the defendants had failed to reemploy the plaintiff following his leave of absence, in violation of General Statutes § 10-151. In the second count, the plaintiff alleged that two teachers had been hired in violation of his rights and he sought a declaratory judgment that their employment contracts were illegal and void. He also sought temporary and permanent injunctions against the defendants and the two teachers and a writ of mandamus to compel the defendants to reinstate him in his former teaching job. Thereafter, the

[1] Article 13, § II, of the agreement between the board and the Stamford Federation of Teachers, July, 1977, through July, 1980, provides in pertinent part:

"B. VOLUNTARY LEAVE

"1. A unit member shall be eligible for a voluntary leave of absence for a period of one school year without pay or benefits if he or she notifies the Personnel Office in writing by July 1st preceding the school year desired for leave of the intention to take leave.

"2. Upon conclusion of said leave, the unit member shall be entitled to re-employment in the position he or she left if available or in a comparable position for which he or she is certified.

"3. However, to be entitled as in 2 above, said unit member shall notify the Personnel Office in writing by February 1st of the year prior to expected return of intention to return. If notification is not received by said date, said unit member loses entitlement to re-employment."

plaintiff amended his complaint to add a third count alleging that Morris had promised him first preference for an opening for a mathematics teacher and had broken that promise, and he added to his prayer for relief a claim for back pay and benefits.

Nearly six years after commencement of the suit, the plaintiff requested permission to amend his complaint to add claims of due process violations proscribed by 42 U.S.C. §§ 1983, 1985 and 1986, and the due process and equal protection clauses of the fourteenth amendment to the United States constitution. The defendants objected to the amendment and the court, *Cioffi, J.*, denied the plaintiff leave to amend. Earlier, the court had stricken the case from the jury docket and ordered that it be tried to the court.

In 1984, the defendants moved for summary judgment on all three counts. The court, *Ryan, J.*, granted the motion as to counts two and three, but denied summary judgment as to count one on the ground that a factual question regarding the plaintiff's tenure status was unresolved and that there was a legal question of whether the board's refusal to reemploy the plaintiff constituted a termination within the meaning of General Statutes § 10-151. The matter was referred to an attorney state trial referee for trial. After trial, the referee issued his report containing thirty-four findings of fact and a memorandum concluding that the plaintiff did not resign his position by failing to meet the February 1 deadline nor was he terminated by the board, and that he remained employed by the board. The referee assessed damages against the board in the amount of $116,899.88 for loss of wages and interest.

Following the denial by the referee of the defendants' motions to correct the report, the matter came before the Superior Court for judgment. The court, *Lewis, J.*, rejected the report, revoked the reference and rendered

judgment for the defendants, holding that § 10-151 did not apply to the plaintiff's "constructive resignation" triggered by his failure to meet the February 1 deadline.

The plaintiff appeals raising as claims of error: (1) the manner in which the trial court reviewed, rejected and disposed of the referee's report; (2) the trial court's refusal to permit the plaintiff to amend his complaint; (3) removal of the case from the jury list; and (4) the trial court's granting of summary judgment on count two of the complaint.[2] We hold that the court lacked subject matter jurisdiction over counts one and two and should have dismissed the case. Accordingly, we find error only in the court's disposing of count one by rendering judgment for the defendants and in granting the defendants' motion for summary judgment on count two. In light of our disposition of this case, we need address only the first and fourth claims of error.

I

With respect to count one, the plaintiff contends that the court rejected the referee's report and revoked the reference in a manner inconsistent with Practice Book §§ 440 through 443. He argues that the court erroneously acted on the report by rejecting it when there were motions to correct it still outstanding, and that, following rejection, rather than leaving the case to be disposed of by the court, as directed by Practice Book § 443,[3] the trial court prematurely disposed of the case.

---

[2] The plaintiff asserts no claim of error with regard to the trial court's granting of summary judgment on count three.

[3] "[Practice Book] Sec. 443. FUNCTION OF THE COURT

"The court shall render such judgment as the law requires upon the facts in the report as it may be corrected. If the court finds that the [referee] has materially erred in his rulings or that by reason of material corrections in his findings the basis of the report is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall

The defendants argue that the plaintiff's action was not cognizable under General Statutes § 10-151 and the court, therefore, lacked subject matter jurisdiction and appropriately rendered judgment for the defendants. We agree with the defendants that the court lacked subject matter jurisdiction.

General Statutes § 10-151,[4] the Teacher Tenure Act, provides for continuing employment of tenured teach-

reject the report and refer the matter to the same or another [referee] for a new trial or revoke the reference and leave the case to be disposed of in court.

"The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found."

[4] General Statutes § 10-151 provides in pertinent part: "(d) The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. Nothing in this section or in any other section of the general statutes or of any special act shall preclude a board of education from making an agreement with an exclusive bargaining representative which contains a recall provision. Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing. A board of education may designate a subcommittee of three or more board members to conduct hearings and submit written findings and recommenda-

ers, except that a teacher may be terminated for inefficiency or incompetence, insubordination, moral misconduct, medical disability, elimination of the teaching position or loss of the position to another teacher, or other due and sufficient cause. General Statutes

tions to the board for final disposition in the case of teachers whose contracts are terminated for the reasons stated in subdivision (5) of this subsection. Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, (A) before the board of education or a subcommittee of the board, (B) if indicated in such request or if designated by the board before an impartial hearing panel or, (C) if the parties mutually agree, before a single impartial hearing officer chosen by both parties. If the parties are unable to agree upon the choice of a hearing officer within five days after their decision to use a hearing officer, the hearing shall be held before the board or panel, as the case may be. The impartial hearing panel shall consist of three members appointed as follows: The board of education shall appoint one panel member, the teacher shall appoint one panel member, and those two panel members shall choose a third, who shall serve as chairperson. Within ninety days after receipt of the request for a hearing, the impartial hearing panel, subcommittee of the board or hearing officer, unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer. Each party shall pay the fee of the panel member selected by it and shall share equally the fee of the third panel member or hearing officer and all other costs incidental to the hearing. If the hearing is before the board of education, the board shall render its decision within fifteen days after the close of such hearing, and shall send a copy of its decision to the teacher. The hearing shall be public if the teacher so requests or the board, panel or subcommittee so designates. The teacher concerned shall have the right to appear with counsel at the hearing, whether public or private. A copy of the transcript of the proceedings of the hearing shall be furnished by the board of education, upon written request by the teacher within fifteen days after the board's decision, provided the teacher shall assume the cost of any such copy. Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section. . . .

"(f) Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the superior court. Such appeal

§ 10-151 (d) (1) through (6). The statute establishes procedures for notice to the teacher and hearing of the matter before an impartial panel; General Statutes § 10-151 (d); and affords the teacher the right to appeal the decision to the Superior Court. General Statutes § 10-151 (f).

Section 10-151 protects a tenured teacher from termination of employment except for cause or elimination of the teaching position. *Cahill* v. *Board of Education,* 198 Conn. 229, 240, 502 A.2d 410 (1985). We recognize that not all separations from employment as a teacher are encompassed by the statute. Since, by its terms, the statute contemplates termination initiated by the board of education, a teacher's retirement or voluntary resignation would not trigger the act's protections. We have also noted that termination of a tenured teacher's employment under § 10-151 "carries with it a suggestion of the teacher's unsuitability." Id., 241. We have acknowledged that termination for cause "may implicate a teacher's professional standing and reputation for competence, efficiency, and integrity . . . ." *Lee* v. *Board of Education,* 181 Conn. 69, 79–80, 434 A.2d 333 (1980).

shall be made returnable to said court in the same manner as is prescribed for civil actions brought to said court. Any such appeal shall be a privileged case to be heard by the court as soon after the return day as is practicable. The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearing held by the board of education or by an impartial hearing panel for such teacher, together with such other documents, or certified copies thereof, as shall constitute the record of the case. The court, upon such appeal, shall review the proceedings of such hearing and shall allow any party to such appeal to introduce evidence in addition to the contents of such transcript, if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court, upon such appeal and after a hearing thereon, may affirm or reverse the decision appealed from. Costs shall not be allowed against the board of education unless it appears to the court that it acted with gross negligence or in bad faith or with malice in making the decision appealed from."

Here, the plaintiff was denied renewal of his teaching position, not for reasons related to his personal competence, but because he had failed to meet the deadline for notifying the board of his intention to return to work in the following school year. Consequently, he was not terminated for cause within the meaning of § 10-151. See *Delagorges* v. *Board of Education,* 176 Conn. 630, 635–36, 410 A.2d 461 (1979). Furthermore, access to the courts under the Teacher Tenure Act is possible only on appeal of a decision of the board of education. General Statutes § 10-151 (f). In this case, there was no appeal, nor could there have been. Therefore, the court lacked jurisdiction over the case, should not have referred it to a referee and should have dismissed the action. See *Simmons* v. *State,* 160 Conn. 492, 280 A.2d 351 (1971) (where statute upon which action is based is inapplicable, trial court is without jurisdiction and reference to referee is improper). Accordingly, it is not necessary for this court to determine whether the trial court properly followed the practice rules invoked by the plaintiff.

The plaintiff also argues, for the first time on appeal, that: (1) his tenure is a protected property right under the federal and state constitutions, violated by the nonrenewal provision of the collective bargaining agreement; (2) he was not aware of the deadline because he had not been given a copy of the collective bargaining agreement, and that the failure of the board to provide him a copy was itself a violation of the agreement; (3) as a matter of contract law, the deadline provision did not make time of the essence of the contract; and (4) the board did not consistently enforce such deadlines. These issues are not properly before this court because they were not raised below, nor did they arise after trial. Practice Book § 4185. Furthermore, had they been raised below, the trial court would have lacked subject matter jurisdiction to entertain them

because they would more appropriately have been advanced in the context of a grievance proceeding.[5] *School Administrators Assn.* v. *Dow,* 200 Conn. 376, 382–83, 511 A.2d 1012 (1986).

The collective bargaining agreement between the plaintiff's union and the board delineates a formal four step procedure for filing a grievance: the matter is presented, in turn, to the teacher's principal or immediate supervisor, to the superintendent of schools, to the board of education, and finally, to arbitration. The agreement defines "grievance" as "a claim by a unit member . . . that there has been a violation, misinterpretation or misapplication of the provisions of this Agreement or of the rules, regulations, administrative directives or policies of the Board."

Enforcement of the arbitration provisions by the court is provided by General Statutes § 52-408. Following arbitration, the parties may apply to the court to have the award confirmed, corrected, vacated or modified. General Statutes §§ 52-417 through 52-420. Under General Statutes § 52-421, judgment may be entered upon the award, rendering it enforceable as if it had been rendered in a civil action. General Statutes § 52-423 affords a right of appeal from judgment on an arbitration award.

[5] The parties did not address the applicability of grievance proceedings to this dispute in their briefs. We have before us, among the exhibits on appeal, the collective bargaining agreement which, in Article 23, provides for resolution of employer-employee disputes through grievance and arbitration proceedings and a formal grievance declaration signed by the plaintiff. Failure to exhaust available grievance and arbitration remedies implicates the court's subject matter jurisdiction. *School Administrators Assn.* v. *Dow,* 200 Conn. 376, 383, 511 A.2d 1012 (1986). The issue of subject matter jurisdiction may be raised at any time, even on appeal; *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556–57, 529 A.2d 666 (1987); and by the court itself. See *Manley* v. *Pfeiffer,* 176 Conn. 540, 545, 409 A.2d 1009 (1979). Once brought to the court's attention, it must be resolved. *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985). Therefore, we decide this issue although it was not raised by the parties.

The Teacher Negotiation Act; General Statutes §§ 10-153a through 10-153n; and the arbitration statutes; General Statutes §§ 52-408 through 52-424; evidence a preference for resolving disputes between teachers and boards of education through contract grievance proceedings, thereby affording both union and employer an exclusive and uniform method for orderly settlement of grievances. See *School Administrators Assn.* v. *Dow,* supra, 381–82. We have held that, "as a matter of state law, parties to a collective bargaining agreement must attempt to exhaust the exclusive grievance and arbitration procedures established in their agreement before resorting to court." Id., 382.

The grievance procedures afforded by the collective bargaining agreement were available to the plaintiff to redress the loss of his teaching position. They were an appropriate vehicle for the resolution of his claims, including his constitutional claims. Id., 382–83. In fact, the record contains evidence that a grievance proceeding had been commenced but not pursued. There was testimony that the plaintiff's formal grievance complaint was presented by the then chairman of the union's grievance committee to Peebles who declined to discuss it on the ground that the matter was in litigation. The union proceeded no further, nor is there any evidence that the plaintiff followed up the matter with the union.

It is clear that the plaintiff failed to exhaust the grievance and arbitration procedures available to him, thereby depriving the trial court of subject matter jurisdiction.[6] The court, therefore, should have dismissed count one.

---

[6] We have before us the entire collective bargaining agreement. There is no indication that the parties did not intend the grievance-arbitration procedures to be other than the exclusive remedy for resolution of their disputes.

## II

We also hold that the court lacked subject matter jurisdiction over count two. In that count, the plaintiff sought a judgment declaring that the defendants had improperly and illegally awarded employment contracts to nontenured teachers while denying him reinstatement, and that those contracts were void. In granting summary judgment, the court found that the plaintiff had failed to comply with § 390 (d) of the Practice Book and that the court thus lacked subject matter jurisdiction. Section 390 (d) provides that the court will not render a declaratory judgment "unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." We have required strict adherence to this rule and have held that failure to comply with it is fatal to the court's jurisdiction. *Tucker* v. *Maher*, 192 Conn. 460, 468–69, 472 A.2d 1261 (1984); *Pinnix* v. *LaMorte*, 182 Conn. 342, 343, 438 A.2d 102 (1980). "This rule is not merely a procedural regulation. It is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard." *Benz* v. *Walker*, 154 Conn. 74, 77, 221 A.2d 841 (1966); *Tucker* v. *Maher*, supra, 469.

The plaintiff argues that the issue of noncompliance with § 390 (d) was not before the court because it was not raised by the defendant and not briefed by either party. This contention is without merit. Since failure to comply with § 390 (d) implicates subject matter jurisdiction, it can be raised at any point in the proceedings, even on appeal, and by the court. *Tucker* v. *Maher*, supra; *Manley* v. *Pfeiffer*, 176 Conn. 540, 545, 409 A.2d 1009 (1979).

The trial court, without specifying those persons required to be joined as parties or entitled to reasonable notice of the action, stated that neither count two nor the record as a whole establishes that all persons having an interest in the subject matter of the complaint were joined as parties or notified. The record supports the court's conclusion. Without ascertaining the identification of all persons falling within the ambit of § 390 (d), at the very least, in addition to the named defendants, the two teachers whose contracts were under attack by the plaintiff had an interest in the subject matter of the litigation and were entitled to the safeguards afforded by § 390 (d). The court, therefore, was without jurisdiction over the second count.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to dismiss both counts for lack of subject matter jurisdiction.

In this opinion the other justices concurred.