[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Pearl Mitchell brings this action for reinstatement to her job as a teacher with the New Haven school system, as well as back pay. The defendant New Haven Board of Education opposes the relief sought.
The plaintiffs employment history with the New Haven Board of Education is an interesting one. The plaintiff had previously worked for one year as a teacher in the Stamford school system. After some years working at other jobs, the plaintiff was hired as a teacher by the defendant in July of 1987. On March 1, 1993, the plaintiff had a heart attack at school. For the month after her heart attack, the plaintiff was out on sick leave. Then from April 1, 1993, to June 30, 1993 she was on an approved leave of absence for medical reasons.
In consultation with her physician, the plaintiff decided that classroom work was too stressful and would impair her health. She inquired about an assignment that would allow her to continue to work in the job of teacher, but not in a classroom. She was told that there were no such assignments available to her.
At that point, the plaintiff was approximately two years short of having ten years of service to qualify for the teacher's retirement plan. The defendant was sympathetic to this problem. An agreement was reached that would allow the plaintiff to "buy in" to the State Teachers Retirement System for purposes of future pension payments and medical benefits. Executed in 1993, the full agreement states:
 MEMORANDUM OF AGREEMENT
In consideration of the mutual promises set forth below, tenured teacher Pearl Mitchell, the New Haven Board of Education and the New Haven Federation of Teachers agree as follows:
1. Tenured teacher, Pearl Mitchell, shall be placed in the position of teacher on special assignment with the duties attached hereto for the remainder of the 1993-94 school year.
2. Ms. Mitchell shall be placed upon an unpaid leave of absence with paid medical benefits (level of benefits in effect during the 1993-94 CT Page 13364 school year) for the period 9/1/94 through 6/30/95.
3. Ms. Mitchell hereby irrevocably resigns her position in good standing effective June 30, 1995.
4. If Ms. Mitchell applies for teaching positions in the future, representatives of the New Haven Board of Education shall inform prospective employers that Ms. Mitchell left New Haven in good standing.
5. The New Haven Board of Education shall assist Ms. Mitchell in obtaining at her cost, retirement credit for the duration of her unpaid leave of absence (September 1, 1994 through June 30, 1995).
6. The New Haven Board of Education shall assist Ms. Mitchell in securing retirement credit for the period of March, April, May and June of 1993.
The agreement was signed by Pearl Mitchell, the plaintiff; Frank Carrano, President of the New Haven Federation of Teachers, the union that was the recognized bargaining unit for New Haven teachers; and by Reginald Mayo, Superintendent, for the New Haven Board of Education. An outline of the job duties of the "special assignment" was appended, describing a largely clerical assignment at the central office of the Board of Education.
All did not go as planned. The plaintiff worked at the central office job, but it is unclear whether payments were made into the pension plan for that year. She finished her temporary assignment in the summer of 1994 and took her one year leave of absence thereafter. During the 1994-95 year, the plaintiff did not pay into the retirement system. Upon inquiry, the plaintiff was told that the rules of the State Teachers Retirement System ("STRS") would not allow it to accept payments from her directly. Also the STRS office said it had no paperwork from the New Haven Board of Education that would authorize it to accept her payments and credit them properly. Rather tan vigorously follow up to unravel the misunderstanding directly with her employer or through her union, the plaintiff did nothing about it.
Beginning on June 30, 1994, she was no longer on the payroll of the Board of Education. As of June 30, 1995, her resignation became effective,[1] and she was no longer employed by the defendant.
For the next several years, the plaintiff did nothing at all to attempt to perfect her pension rights. In 1998 she once again contacted the teachers' union for help. Union President Frank Carrano approached Superintendent Mayo to inquire whether it was possible to rehire the CT Page 13365 plaintiff These talks were inconclusive. Carrano then suggested to the plaintiff that she retain an attorney to help her since she was no longer an employee or a union member and could not be assisted formally by the union. The plaintiff retained Attorney Rolan Young. Young opened negotiations with Mayo to rehire the plaintiff for a temporary period to allow the plaintiff to obtain the necessary retirement credits. The superintendent agreed to such an arrangement provided that two things were included: 1) that the plaintiff not be put back in a classroom setting, and 2) that the plaintiff agree to a final definite date on which her resignation or retirement would be effective.
The agreement was negotiated by Attorney Young on behalf of the plaintiff and by Mayo in consultation with counsel for the defendant school board. It was very similar to the 1993 agreement except that the plaintiff was to be employed and paid in such a way that the Board of Education would actually make the STRS payments for the plaintiff as part of the normal payroll package. The Employment Agreement signed by Mitchell and Mayo provided:
Section 2. The employment of Ms. Mitchell shall be for a period commencing with the school year February 10, 1998, and ending with the school year ending February 10, 2000. The period of employment may not be extended, and Ms. Mitchell agrees that, at the end of such period, Ms. Mitchell shall retire or resign from employment by the Board.
The agreement was not signed by any representative of the teachers union, although the union was aware that the matter had been resolved with the rehiring of the plaintiff. She was reinstated as an employee of the New Haven Board of Education and as a dues-paying union member.
After some difficulty in creating a suitable position for the plaintiffs employment, the plaintiff was assigned to the Strong School as a reading tutor to individual children or to small groups of children.
On January 20, 2000, Mayo asked the plaintiff to formally submit her letter of resignation or retirement to him by February 9, to be effective, as agreed, on February 10, 2000. The plaintiff refused and asked the union to intercede on her behalf The union sent communications to various officials of the defendant asserting that the employment agreement of February 1998 was invalid because it was not countersigned by a union representative and asserting that the plaintiff could not be terminated without a hearing and specific findings under Conn. Gen. Stat. § 10-151, the same claims that the plaintiff makes in this lawsuit. Beginning February 11, 2000, the plaintiff was told not to report to work as her employment was at an end. At its public meeting of March 13, 2000, the Board of Education received a report and CT Page 13366 recommendation of the superintendent that the plaintiffs status was "Retirement per Agreement." The Board voted its approval.
The union remained active on the plaintiffs behalf during this time. For example, a dispute arose over the failure of the defendant to pay the plaintiff for the time between February 10 and March 13, 2000. The union filed a grievance under the collective bargaining agreement, and it was resolved by the payment to plaintiff of her salary for that period. The union never filed a grievance about the terms of the 1998 agreement nor over the failure of the Board to conduct a hearing prior to the plaintiffs separation from employment.
The plaintiff claims in this lawsuit that she did not, in fact, voluntarily retire or resign; that as of February 10, 2000, she was a tenured teacher; and that as a result she could only be terminated from employment by following the hearing procedure under the Teacher Tenure Act, Conn. Gen. Stat. § 10-151. The defendant claims that the plaintiffs retirement was voluntary; that she was not a tenured teacher because she only had two years of unbroken service at that point; and that even if she were a tenured teacher, she was not entitled to invoke the protections of § 10-151. The defendant also argues that the plaintiff cannot raise these claims in this forum, because the collective bargaining agreement provides that such claims can only be asserted through the grievance and arbitration process. Because these administrative remedies have not been utilized and exhausted, the defendant alleges that this court has no jurisdiction.
The issues of whether the plaintiff retirement was voluntary and whether the Teacher Tenure Act applies are intertwined. The court's findings on those issues make it unnecessary to determine whether the plaintiff qualified as a tenured teacher under the provisions of the act. The question of the whether the plaintiff voluntarily resigned is not one that is capable of resolution under the Teacher Tenure Act. Only terminations that are initiated by the Board of Education trigger the protections of the act, not those involving the voluntary retirement or resignation of a teacher. Kolenberg v. Board of Education, 206 Conn. 113,120, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S.Ct. 2903,101 L.Ed.2d 935 (1988). A determination of whether such an agreement was voluntary must be made prior to and outside the scope of a hearing pursuant to § 10-151. See Geren v. Board of Education,36 Conn. App. 282, 296 (1994).
Concerning whether the resignation or retirement was voluntary, the plaintiff claims that she was coerced into signing the 1998 agreement, or that its terms were misrepresented to her, and thus her resignation or retirement was not voluntary. The court finds this to be without merit. CT Page 13367 In negotiating the terms of the 1998 agreement, the plaintiff was represented by competent counsel of her own choosing. The terms of the agreement could not have been clearer. The plaintiff had been involved in negotiating and signing a nearly identical agreement in 1993. There is no evidence of duress or coercion. The plaintiffs claim that the agreement was not voluntarily and knowingly entered into is not credible. The plaintiff's agreement to retire or resign was entirely voluntary, and she should be held to it.
As to the court's jurisdiction to afford the plaintiff any other relief to which she may be entitled, the defendant raises the issue of subject matter jurisdiction. The plaintiff argues that she should not have to exhaust administrative remedies under the collective bargaining agreement because her situation is different from that of an ordinary aggrieved union member since the union did not countersign the 1998 agreement. But she cannot claim and the court does not find that the union was unaware of it.
The court finds that the plaintiffs 1998 rehire for a limited period of time was, in fact, first proposed by the union. The union knew in 1998 that the plaintiff had been rehired for a finite term, although, since the collective bargaining agreement did not provide for such an arrangement, the union chose to turn a blind eye to it. The agreement benefited the plaintiff and did not materially affect the union in any adverse way. The agreement benefited the Board of Education by extricating it from a claim that it had arguably bungled the handling of the plaintiffs benefits under the 1993 agreement, to which the union was a patty. When a dispute arose about the agreement in January, February and March of 2000, Matthew Borenstein, then the union president, assisted and advocated on behalf of the plaintiff with the defendant, but the union chose not to file a grievance or demand arbitration over the validity of the 1998 agreement or over the plaintiffs separation from employment. Nor did the plaintiff file a grievance on her own. The union continues to be fully aware of the plaintiffs claims, as Mr. Borenstein testified in this trial, but has chosen not to pursue them.
"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." Hunt v.Prior, 236 Conn. 421, 431 (1996), citing Labbe v. Pension Commission,229 Conn. 801, 811 (1994). Nothing suggested by the plaintiff provides an exception to this rule. CT Page 13368
The court finds the plaintiffs agreement to resign or retire to have been voluntary and self-executing as of February 10, 2000. The court lacks subject matter jurisdiction to adjudicate the plaintiffs claims and accordingly enters judgment dismissing