******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# DOREEN SPIOTTI *v.* TOWN OF WOLCOTT ET AL.
## (SC 19691)

Rogers, C. J., and Palmer, Eveleigh, Espinosa, Robinson, D'Auria and Vertefeuille, Js.

*Syllabus*

The plaintiff police officer sought to recover damages from the defendant town for alleged employment discrimination, claiming that the defendant had violated the statute (§ 31-51q) pertaining to, inter alia, the termination of employees for engaging in protective speech and the statute (§ 46a-60 [a] [4]) pertaining to discriminatory practices against employees who have previously brought a discrimination action. After the plaintiff had been terminated, she filed a grievance pursuant to the collective bargaining agreement between the plaintiff's union and the defendant. The state Board of Mediation and Arbitration conducted hearings with respect to the grievance, and, on the basis of its conclusion that the plaintiff had made false statements in her discrimination complaint to the police department's ombudsman and during the department's investigation of that complaint, the board ultimately concluded that the plaintiff had been terminated for just cause. The plaintiff then brought the present action, and the defendant filed a motion for summary judgment, contending, among other things, that the plaintiff's claims under §§ 31-51q and 46a-60 (a) (4) were barred by the doctrine of collateral estoppel because the factual underpinning of those claims had been decided adversely to her by the board. The trial court denied the motion as to those claims, relying on this court's decision in *Genovese* v. *Gallo Wine Merchants*, *Inc.* (226 Conn. 475), which interpreted the statute (§ 31-51bb) providing that no employee shall be denied the right to pursue a cause of action arising under a state statute or the state or federal constitution solely because the employee is covered by a collective bargaining agreement. The trial court specifically concluded that an adverse determination in an arbitration proceeding pursuant to a collective bargaining agreement should not have a preclusive effect with regard to a subsequent statutory cause of action. On appeal from the trial court's denial of the defendant's motion for summary judgment, the defendant claimed that *Genovese* should be overruled because, subsequent to that decision, the legislature enacted the statute (§ 1-2z) requiring courts to interpret a statute according to its plain and unambiguous language without consulting extratextual evidence of its meaning, and the court in *Genovese* had relied on the legislative history of § 31-51bb when interpreting that purportedly clear and unambiguous statute. The defendant also claimed that the principles of stare decisis did not prevent this court from overruling *Genovese*. *Held* that, even if § 31-51bb was clear and unambiguous and its legislative history was the sole basis for this court's decision in *Genovese*, the legislature did not intend that the enactment of § 1-2z would overrule the prior interpretation of any statutory provision merely because this court previously had failed to apply the plain meaning rule, and, therefore, ordinary principles of stare decisis applied to the defendant's claim; furthermore, this court declined to depart from the principles of stare decisis and to overrule its decision in *Genovese*, as the legislature had not taken action since that decision to suggest that it disagreed with this court's conclusion that § 31-51bb was intended to bar the application of the doctrine of collateral estoppel to claims of statutory and constitutional violations brought after a claim involving the same issues had been finally resolved in grievance procedures or arbitration, and the defendant did not identify any intervening developments in the law, unconscionable results, or irreconcilable conflicts or difficulties in this court's interpretation of § 31-51bb that would justify overruling *Genovese*; moreover, by enacting § 31-51bb, the legislature limited an arbitrator's power to determine finally and conclusively factual and legal issues that are critical to an employee's right to pursue a statutory cause of action, and, to conclude that the trial court must defer to the board's findings of fact would be inconsistent with this legislative intent.

Argued May 2—officially released July 11, 2017

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Zemetis, J.*, granted the defendants' motion to dismiss the complaint against the defendant Wolcott Police Department and granted in part the defendants' motion to strike; thereafter, the court, *Brazzel-Massaro, J.*, denied in part the named defendant's motion for summary judgment, and the named defendant appealed. *Affirmed.*

*Michael J. Rose*, with whom, on the brief, was *Johanna G. Zelman*, for the appellant (named defendant).

*Eric R. Brown*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The primary issue that we must resolve in this appeal is whether this court should overrule its decision in *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 486, 628 A.2d 946 (1993), holding that, under General Statutes § 31-51bb,[1] a factual determination made in a final and binding arbitration conducted pursuant to a collective bargaining agreement does not have preclusive effect in a subsequent action claiming a violation of the state or federal constitution or a state statute. The plaintiff, Doreen Spiotti, was a member of the International Brotherhood of Police Officers, Local 332 (union), and was employed as a police officer in the Wolcott Police Department (department). After the plaintiff filed a complaint with an ombudsman for the department alleging that the department had engaged in retaliatory conduct against her, the department conducted an investigation and concluded that certain statements that the plaintiff had made in her complaint were false. Thereafter, Neil O'Leary, the chief of the department, recommended to the town council of the named defendant, the town of Wolcott,[2] that the plaintiff's employment be terminated. The defendant terminated the plaintiff, who then filed a grievance pursuant to the procedures set forth in the collective bargaining agreement between the defendant and the union. In accordance with those procedures, the Connecticut State Board of Mediation and Arbitration (board of mediation) conducted hearings on the issue of whether the plaintiff's employment had been terminated for just cause, and it ultimately concluded that there was just cause on the basis of its determination that the plaintiff had made false statements in her complaint to the ombudsman and during the department's investigation of that complaint.

Thereafter, the plaintiff brought the present action alleging, among other things, that her termination was in retaliation for bringing a previous action against the defendant alleging sex discrimination in violation of General Statutes § 46a-60 (a) (4), and for engaging in protected speech, namely, the complaint to the ombudsman, in violation of General Statutes § 31-51q.[3] The defendant filed a motion for summary judgment on the ground that the plaintiff's claims were barred by the doctrine of collateral estoppel because the factual underpinnings of those claims had been decided adversely to her by the board of mediation in the arbitration proceedings. The trial court denied the motion for summary judgment as to these claims on the ground that, under this court's interpretation of § 31-51bb in *Genovese*, the doctrine of collateral estoppel does not bar a statutory cause of action that is brought after the same issue has been decided in arbitration pursuant to a collective bargaining agreement. The defendant then filed this appeal.[4] The defendant contends that (1) *Geno-*

*vese* should be overruled as a result of the legislature's subsequent enactment of General Statutes § 1-2z,[5] and (2) even if *Genovese* should not be overruled as the result of § 1-2z, it should be overruled because it was wrongly decided under then existing law.[6] We conclude that *Genovese* is still good law and, therefore, affirm the judgment of the trial court.

Because the underlying facts of this case have little bearing on the issue that is before us, we need not discuss them in further detail, but may proceed directly to our legal analysis. We begin with the standard of review. As we have indicated, the trial court's decision denying the relevant portions of the defendant's motion for summary judgment was premised on this court's interpretation of § 31-51bb in *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 486, as barring the application of the doctrine of collateral estoppel to statutory claims brought subsequent to an arbitration in which the underlying issues were determined adversely to the plaintiff. The defendant's claims that *Genovese* should be overruled as the result of the enactment of § 1-2z or that it should be overruled because it was incorrect at the time it was decided involve questions of statutory interpretation subject to plenary review. See *State* v. *Salamon*, 287 Conn. 509, 529, 949 A.2d 1092 (2008) (because whether prior interpretation of statute should be overruled involves construction of statute, review is plenary).

To provide context for our resolution of the defendant's claims, we provide the following overview of this court's decision in *Genovese*. The plaintiff in that case claimed that the trial court improperly had concluded that the doctrine of collateral estoppel precluded his statutory cause of action because an arbitrator previously had determined the underlying factual issue adversely to him. *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 479. After oral argument, this court in *Genovese* sua sponte raised the issue of whether § 31-51bb had any effect on the judgment of the trial court and requested supplemental briefs on that issue. Id., 479–80. The majority in *Genovese* began its analysis of this issue by observing that § 31-51bb was intended to overturn this court's holding in *Kolenberg* v. *Board of Education*, 206 Conn. 113, 123, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988), that an "employee's failure to exhaust the grievance and arbitration procedures available under a collective bargaining agreement deprive[s] a trial court of jurisdiction over a cause of action arising from the employment relationship." *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 480–81. The majority recognized that it did not follow from this fact that, when an employee *has* exhausted grievance procedures and obtained a final decision in an arbitration proceeding, the employee may relitigate issues decided by the arbitrator in a subsequent action raising a statutory claim.

Id., 482–83. The majority further recognized that, "ordinarily a factual determination made in final and binding arbitration is entitled to preclusive effect." Id., 483. Nevertheless, it concluded that applying the doctrine of collateral estoppel to preclude employment related statutory claims that previously had been determined in an arbitration pursuant to a collective bargaining agreement would defeat the intent of § 31-51bb, namely, "to ensure that employees covered by a collective bargaining agreement receive the same opportunity to litigate their statutory claims as those employees who are not covered by a collective bargaining agreement." Id., 484.

The majority in *Genovese* further determined that this interpretation was supported by the legislative history of § 31-51bb. Id., 484–85. Specifically, the majority relied on the remarks of Representative Jay B. Levin that the purpose of the legislation was to codify certain United States Supreme Court decisions that had "refused to give preclusive effect to a prior arbitral decision in a subsequent court action brought to vindicate an employee's statutory rights." Id., 485; see also 31 H.R. Proc., Pt. 13, 1988 Sess., pp. 4565–66, remarks of Representative Jay B. Levin, citing *McDonald* v. *West Branch*, 466 U.S. 284, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984), *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981), and *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). Relying on the reasoning of these cases, the majority in *Genovese* further observed that "[a]n arbitrator's frame of reference . . . may be narrower than is necessary to resolve [a statutory] dispute because the arbitrator's power is . . . limited by . . . the collective bargaining agreement and the submission of the parties"; *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 486–87; employees are represented by their union during grievance procedures, the union's interests may conflict with an employee's interests; id., 488; and "arbitration may be a less effective forum for the final resolution of statutory claims" than a judicial proceeding because the fact-finding process in arbitration is less robust than in judicial proceedings. Id., 489. Accordingly, the majority concluded that "the legislature intended that . . . an adverse determination [in an arbitration proceeding] should not have preclusive effect" with regard to a subsequent statutory cause of action. Id., 484.

The majority in *Genovese* recognized, however, that § 31-51bb was "contrary to the established judicial principle that voluntary recourse to arbitration proceedings allows the prevailing party, after a final arbitral judgment, to raise a defense of collateral estoppel . . . if the losing party thereafter initiates a judicial cause of action," and "also runs counter to the established legislative policy favoring [alternative] methods of dispute resolution . . . ." (Footnote omitted.) Id., 491–92. In

addition, the majority observed that § 31-51bb permits an employee "to walk away from an unsatisfactory grievance or arbitration outcome," while the employer "is limited to the narrow review afforded by General Statutes [Rev. to 1993] § 52-418 if it concludes that an arbitral result was inappropriate." Id., 492. The majority noted that "[a] similar disparity in access to our courts, in the case of compulsory lemon law arbitration procedures, was held unconstitutional in *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill*, 212 Conn. 83, 93–98, 561 A.2d 917 (1989), because it violated the open courts provision of our state constitution."[7] *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 492. Accordingly, the majority acknowledged that "construing [§ 31-51bb] in accordance with its legislative history creates a range of problems that the legislature may not have fully considered . . . ." Id., 490.

In his dissenting opinion in *Genovese*, Justice Berdon contended that the majority's construction of § 31-51bb was not supported by the plain language of the statute; id., 494; and violated the rule of statutory interpretation requiring that "a statute should not be construed as altering the [common-law] rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express." (Internal quotation marks omitted.) Id., 495. He further contended that the majority had "tipped [the] delicate procedural balance for resolving grievances between organized labor and management, by giving the employee an advantage not envisioned by the clear mandate of the legislation." Id., 496. Accordingly, Justice Berdon concluded that § 31-51bb did not permit an employee, after voluntarily submitting a claim to arbitration, to pursue a subsequent statutory cause of action involving the same issues. Id., 494.

With this background in mind, we first address the defendant's claim that this court's decision in *Genovese* should be overruled as the result of the subsequent enactment of § 1-2z in 2003.[8] Specifically, the defendant contends that the "plain language [of § 31-51bb] only permits an employee covered by a collective bargaining agreement to *also* pursue statutory and constitutional claims *in addition to* pursuing her grievance rights, even if those grievance rights have not yet been exhausted," and the statute simply does not address the distinct issue of whether the doctrine of collateral estoppel applies to a constitutional or statutory claim involving an issue that previously had been decided pursuant to contractually required grievance procedures. (Emphasis in original.) Because, according to the defendant, the meaning of § 31-51bb is clear and unambiguous, and the sole basis for this court's interpretation of § 31-51bb in *Genovese* was the legislative history of the statute, the defendant contends that *Genovese* should be overruled as a result of the enactment

of § 1-2z, which codified the plain meaning rule. See *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 407–408, 891 A.2d 959 (2006) ("[u]nder § 1-2z, we are precluded from considering extratextual evidence of the meaning of a statute . . . when the meaning of the text of that statute is plain and unambiguous, that is, the meaning that is so strongly indicated or suggested by the [statutory] language as applied to the facts of the case . . . that, when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning" [emphasis in original; internal quotation marks omitted]).

We reject this claim. Even if we were to agree with the defendant that § 31-51bb is clear and unambiguous with respect to the collateral estoppel issue and that the sole basis for this court's decision in *Genovese* was the legislative history of the statute, this court previously has held that the legislature did not intend that the enactment of § 1-2z would overrule the prior interpretation of any statutory provision merely because we had failed to apply the plain meaning rule. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) (rejecting claim that legislature "intended to overrule every . . . case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule").[9] Rather, the ordinary principles of stare decisis apply to this court's interpretations of statutory provisions that predate the enactment of § 1-2z. See id., 494–95 (discussing principles of stare decisis); id., 501–502 (applying principles of stare decisis to statute under review).

Accordingly, we next address the defendant's claim that *Genovese* was incorrectly decided and that the principles of stare decisis should not prevent this court from overruling it. We begin our analysis of this claim with a review of those principles. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value. . . .

"Moreover, [i]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what

the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *State* v. *Ray*, 290 Conn. 602, 614–15, 966 A.2d 148 (2009).

Factors that may justify overruling a prior decision interpreting a statutory provision include intervening developments in the law, the potential for unconscionable results, the potential for irreconcilable conflicts and difficulty in applying the interpretation. Id., 615; see also *Payne* v. *Tennessee*, 501 U.S. 808, 849, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (Marshall, J., dissenting) (justifications for departing from precedent "include the advent of subsequent changes or development in the law that undermine a decision's rationale . . . the need to bring [a decision] into agreement with experience and with facts newly ascertained . . . and a showing that a particular precedent has become a detriment to coherence and consistency in the law" [citations omitted; internal quotation marks omitted]). In addition, a departure from precedent may be justified "when the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants . . . ." (Internal quotation marks omitted.) *State* v. *Salamon*, supra, 287 Conn. 523.

We conclude that, in the present case, even if we were to assume that we would reach a different conclusion if we were addressing the issue as a matter of first impression, these principles militate against overruling our decision in *Genovese*. In the twenty-four years since *Genovese* was decided, the legislature has taken no action that would suggest that it disagreed with our conclusion that § 31-51bb was intended to bar the application of the doctrine of collateral estoppel to claims of statutory and constitutional violations brought after a claim involving the same issues had been finally resolved in grievance procedures or arbitration. This is so despite the implicit invitation by the majority in *Genovese* for the legislature to reconsider § 31-51bb. See *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 490 ("construing [§ 31-51bb] in accordance with its legislative history creates a range of problems that the legislature may not have fully considered"). Thus, we presume that the legislature acquiesces with that interpretation.[10] See, e.g., *State* v. *Ray*, supra, 290 Conn.

615. Moreover, the defendant has not identified any intervening developments in the law, unconscionable results, irreconcilable conflicts or difficulties in applying our interpretation of § 31-51bb that would justify overruling *Genovese*.[11] Rather, the defendant has simply repeated the arguments that the parties made and that this court rejected in *Genovese*, which does not justify a departure from principles of stare decisis. See id., 613–14 (rejecting defendant's request to overrule prior interpretation of statute when "all of the defendant's arguments . . . expressly were raised and rejected by this court sixteen years [earlier]"). Finally, to the extent that reliance interests are relevant, they weigh against overruling *Genovese* because it is possible that the plaintiff and the union in the present case may have pursued the plaintiff's claims in arbitration differently than they would have if they had believed that the factual determinations made in those proceedings would have preclusive effect in a subsequent statutory cause of action. We decline, therefore, to overrule our decision in *Genovese*.

Finally, we note that the trial court here suggested repeatedly in its memorandum of decision denying in part the defendant's motion for summary judgment that, although the decision of the board of mediation in the arbitration proceeding did not have preclusive effect in the present action, the court was bound by the board's findings of fact. That is not the case. Rather, by enacting § 31-51bb, the legislature limited "an arbitrator's power to determine finally and conclusively *factual* and legal issues that are critical to an employee's right to pursue a statutory cause of action in the Superior Court." (Emphasis added.) *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 487; see also id., 489 (concluding that arbitration does not have preclusive effect in subsequent statutory action in part because arbitration is less effective forum for resolution of factual claims than judicial proceeding). To conclude that the trial court must defer to the arbitrator's findings of fact would be inconsistent with this legislative intent. Accordingly, although the board's decision may be admitted as evidence and accorded such weight as the trial court deems appropriate, that court should consider the plaintiff's factual claims de novo. Cf. *Alexander* v. *Gardner-Denver Co.*, supra, 415 U.S. 59–60 ("[T]he federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under [T]itle VII [of the Civil Rights Act of 1964]. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate."); see also id., 60 n.21 (discussing factors to be considered in determining

weight to be given by court to arbitral decision).

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 31-51bb provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

[2] The department was also named as a defendant in the plaintiff's complaint, but the claims against it were dismissed by agreement of the parties. For the sake of simplicity, in this opinion, we refer to the town of Wolcott as the defendant.

[3] In addition, the plaintiff alleged that the defendant had discriminated against her on the basis of her sex in violation of § 46a-60 (a) (1), breached a settlement agreement resulting from the prior action against the defendant and wrongfully terminated her in violation of General Statutes § 31-51m. The trial court granted the defendant's motion for summary judgment as to each of these claims on the ground that they did not raise a genuine issue of material fact and the plaintiff did not establish a prima facie case for discrimination. The plaintiff has not challenged these rulings in this interlocutory appeal. See footnote 4 of this opinion.

[4] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We note that an interlocutory appeal from the denial of a motion for summary judgment based on the doctrine of collateral estoppel is a final judgment for purposes of appeal. See *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194, 544 A.2d 604 (1988).

[5] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[6] The defendant further claims that, if we overrule *Genovese*, we must conclude as a matter of law that the plaintiff's statutory claims raise no genuine issue of material fact because all relevant facts were found adversely to her in the arbitration proceeding. Because we decline the defendant's invitation to overrule *Genovese*, we need not address this claim.

[7] But see *Alexander* v. *Gardner-Denver Co.*, supra, 415 U.S. 54 (allowing employee, but not employer, to have statutory discrimination claim considered both in arbitration and subsequent court proceeding not unfair to employer because employee "is not seeking review of the arbitrator's decision" by bringing claim in court, but "is asserting a statutory right independent of the arbitration process," while "[a]n employer cannot be the victim of discriminatory employment practices" by employees).

[8] Section 1-2z became effective on October 1, 2003. See Public Acts 2003, No. 03-154, § 1.

[9] Although the defendant cited *Hummel* in its main brief to this court for the general proposition that a court should not lightly overrule its earlier decisions, the defendant did not discuss the fact that this court in *Hummel* had squarely addressed and rejected the argument, which the defendant renews in the present case, that given the adoption of § 1-2z this court should overrule prior decisions involving statutory interpretation in which we did not apply the plain meaning rule. The plaintiff's brief also did not address this holding in *Hummel*. At oral argument before this court, the defendant was questioned about the effect of *Hummel* on its argument pertaining to § 1-2z. Thereafter, the defendant filed a motion requesting that the parties be permitted to file supplemental briefs on that issue because this court had raised it sua sponte. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162, 84 A.3d 840 (2014) (reviewing court may raise unpreserved issue sua sponte only in exceptional circumstances and only if court allows parties to brief issue). We do not agree with the defendant's suggestion that this court improperly raised a new "issue" sua sponte when we asked the defendant about the effect of *Hummel* on its claim that *Genovese* should be overruled in light

of the adoption of § 1-2z. An attorney has an ethical obligation to disclose to the court controlling precedent that is directly adverse to a claim raised, and to explain why that precedent should be either distinguished or overruled. See Rules of Professional Conduct 3.3 (a) (2) ("[a] lawyer shall not knowingly . . . [f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"). In light of this ethical obligation, we cannot conclude that the existence of binding precedent that is directly on point and dispositive of an issue raised by a party is, in and of itself, an "issue" that the court may not raise sua sponte in the absence of exceptional circumstances and briefing by the parties. Although parties are generally entitled to frame the issues without interference from the courts under our adversarial system of justice; see *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 146; they cannot ignore, or expect the courts to ignore, binding legal authority that directly controls the issues as framed by them. Accordingly, we denied the defendant's request for supplemental briefing.

[10] We recognize that this court has held that "the argument in favor of legislative acquiescence is particularly weak" when the legislature has not demonstrated "actual acquiescence," i.e., it has amended the statute but has chosen not to amend the particular provision under review. (Emphasis omitted.) *Stuart* v. *Stuart*, 297 Conn. 26, 47, 996 A.2d 259 (2010); see id. ("[T]he argument in favor of legislative acquiescence is particularly weak because the legislative acquiescence doctrine requires *actual acquiescence* on the part of the legislature. [Thus] [i]n most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue. . . . In other words, [l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute." [Citation omitted; emphasis in original; internal quotation marks omitted.]). Upon reflection, we question whether the case for legislative acquiescence must be "particularly weak" merely because it is not "particularly strong." (Internal quotation marks omitted.) Id. Even if we were to assume, however, that the argument for legislative acquiescence is particularly weak in the present case because the legislature has not amended § 31-51bb since our decision in *Genovese*, the defendant has provided no compelling reason for this court to overrule that case.

[11] *The defendant does claim that it would be "outrageous" to reinstate the plaintiff to her position as a police officer when the board of mediation found that she had made false statements in her complaint to the ombudsman and during the investigation of that complaint. This argument, however, ignores the fact that the very reason for this court's decision in Genovese was that "[t]he [fact-finding process] in arbitration usually is not equivalent to judicial [fact-finding]. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." (Internal quotation marks omitted.) Genovese v. Gallo Wine Merchants, Inc., supra, 226 Conn. 489. We see nothing outrageous or unconscionable about allowing the plaintiff to litigate her factual claims de novo in court, including her claim that she did not make false statements.*