SAM CORCORAN *v.* GERMAN SOCIAL SOCIETY
FROHSINN, INC.
(AC 26720)

McLachlan, Rogers and West, Js.

Argued October 25, 2006—officially released March 6, 2007

Renee C. Redman, with whom, on the brief, were Jennifer C. Vickery, Lenora M. Lapidus, pro hac vice, and Emily J. Martin, pro hac vice, for the appellant (plaintiff).

Richard D. Haviland, for the appellee (defendant).

Opinion

ROGERS, J. The plaintiff, Sam Corcoran, appeals from the trial court's judgment in favor of the defendant, German Social Society Frohsinn, Inc., on the plaintiff's complaint alleging gender discrimination by a public accommodation in violation of General Statutes § 46a-64.[1] She claims on appeal that (1) the court failed to apply the proper legal standard in evaluating whether the defendant was a public accommodation and (2) the court's finding as to the defendant's selectivity of membership was clearly erroneous.[2] We agree with the plaintiff's first claim and, accordingly, reverse the judgment of the trial court.[3]

---

[1] General Statutes § 46a-64 (a) provides in relevant part that "[i]t shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, marital status, age, lawful source of income, mental retardation, mental disability or physical disability, including, but not limited to, blindness or deafness of the applicant . . . ." (Emphasis added.)

" 'Place of public accommodation, resort or amusement' " is defined in General Statutes § 46a-63 (1) as "any establishment which caters or offers its services or facilities or goods to the general public, including, but not limited to, any commercial property or building lot, on which it is intended that a commercial building will be constructed or offered for sale or rent . . . ."

[2] The plaintiff also argues, in cursory fashion, that the issue of freedom of intimate association was not relevant to the case and was not properly before the court but concedes that the court did not analyze that issue or base its decision thereon. Consequently, we deem this claim abandoned.

[3] Because our resolution of the plaintiff's first claim is dispositive, we need not address her second claim.

The following facts and procedural history are relevant to the appeal. On July 6, 2000, the plaintiff filed a complaint with Connecticut's commission on human rights and opportunities (commission), alleging that the defendant, which she claimed was a public accommodation, had discriminated against her, on the basis of her gender, by denying her membership. Because her claim was still pending in June, 2002, the plaintiff sought, and obtained, a release of jurisdiction from the commission. See General Statutes § 46a-101. Thereafter, she commenced the present litigation. See General Statutes § 46a-100. In the operative complaint, the plaintiff raised allegations similar to those in her complaint to the commission, namely, that the defendant social establishment was a public accommodation, and, therefore, its policy of not admitting women as members was an illegal discriminatory practice in violation of § 46a-64. The plaintiff's complaint sounded in two counts, each brought pursuant to § 46a-64 but addressing different time periods. She sought an injunction requiring the defendant to admit her as a member and damages.

A court trial was held in February, 2005, at which testimony and evidence were presented. In a memorandum of decision dated June 1, 2005, the court concluded that the defendant was not a public accommodation within the meaning of § 46a-64 (a) and, accordingly, rendered judgment in favor of the defendant. This appeal followed.

The plaintiff argues that in evaluating her claims, the court improperly utilized a test developed in federal case law concerning 42 U.S.C. § 2000a[4] to determine

---

[4] Section 2000a (a) of title 42 of the United States Code provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

Section 2000a (b) of title 42 of the United States Code defines public accommodations as the following, if their "operations affect commerce, or if discrimination or segregation by [them] is supported by State action:

whether the defendant was a public accommodation, rather than a test articulated by our Supreme Court in reference to § 46a-64. We agree.

We begin by noting the applicable standard of review. Because this issue requires us to determine whether the court applied the correct legal standard in deciding whether the defendant was a public accommodation, our review is plenary. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

After making certain factual findings concerning the activities of the defendant, the court analyzed whether the defendant was a "public accommodation" by applying a test articulated in *United States* v. *Lansdowne Swim Club*, 713 F. Sup. 785 (E.D. Pa. 1989), aff'd, 894 F.2d 83 (3d Cir. 1990). The test was used in that case to determine whether the defendant swimming pool facility fell within the "private club" exemption of the federal statutes forbidding discrimination in public accommodations.[5] The court considered the

"(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

"(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

"(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

"(4) any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."

[5] Section 2000a (e) of title 42 of the United States Code provides in relevant part that "[t]he provisions of [title II of the Civil Rights Act of 1964] shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) . . . ." See footnote 4.

following factors in making that determination: "1. The genuine selectivity of the group in the admission of its members. . . . 2. The membership's control over the operations of the establishment. . . . 3. The history of the organization. . . . 4. The use of the facilities by nonmembers. . . . 5. The purpose of the club's existence. . . . 6. Whether the club advertises for members. . . . 7. Whether the club is profit or nonprofit [and] 8. The formalities observed by the club, e.g., bylaws, meetings, membership cards." (Citations omitted.) Id., 796–97.

It is true that Connecticut's appellate courts, in construing state antidiscrimination statutes that have similar federal counterparts, have looked to federal case law for guidance, even though the federal and state statutes may differ somewhat. See, e.g., *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998) (employment discrimination); *Zlokower* v. *Commission on Human Rights & Opportunities*, 200 Conn. 261, 264–65, 510 A.2d 985 (1986) (fair housing). It also has been recognized, however, that "under certain circumstances, federal law defines the beginning and not the end of our approach to the subject. . . . Consequently, on occasion, we have interpreted our statutes even more broadly than their counterparts, to provide even greater protections to our citizens, especially in the area of civil rights." (Citation omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 386 n.11, 870 A.2d 457 (2005).

Our research has not uncovered any case indicating that the protections afforded by § 46a-64 (a) (1) were intended to be limited to those provided by 42 U.S.C. § 2000a (a). To the contrary, our Supreme Court has observed that since their inception, "our public accommodation statutes have repeatedly been amended to expand the categories of enterprises that are covered

and the conduct that is deemed discriminatory." *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, 204 Conn. 287, 296, 528 A.2d 352 (1987). For example, in 1953, the statute was amended to eliminate the "laundry list approach" utilized in the federal statute to enumerate covered entities, and the legislature "substituted the general definition of 'place of public accommodation' that is the precursor of [§ 46a-64 (a) (1)]." Id., 296–97; see also footnotes 1, 4. More importantly, unlike the federal statute, "our statute does not . . . expressly exclude private clubs or organizations." *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 298.

Our Supreme Court articulated the relevant considerations for evaluating whether an entity is a "public accommodation" as follows: "Although no private organization is duty-bound to offer its services and facilities to all comers, once such an organization has determined to eschew selectivity, under our statute it may not discriminate among the general public." Id., 299. Accordingly, "coverage under [§ 46a-64 (a)] depends, in each case, upon the extent to which a particular establishment has maintained a private relationship with its own constituency or a general relationship with the public at large." Id., 300.

Although there are similarities between the *Lansdowne Swim Club* factors and the test for determining whether an organization is a public accommodation under § 46a-64 (a), we are not convinced that the two inquiries are identical. Consequently, we conclude that the court committed legal error in applying the test articulated in *Lansdowne Swim Club* rather than that stated in *Quinnipiac Council, Boy Scouts of America, Inc.*

By so holding, we do not intend to intimate that the factors articulated in *Lansdowne Swim Club* are wholly

irrelevant to the question of whether a party is a public accommodation under § 46a-64 (a). As we have recognized, jurisprudence concerning federal antidiscrimination statutory counterparts often is helpful in evaluating state antidiscrimination statutory claims, albeit at times, as only a starting point. Here, however, the court did not apply or even acknowledge the clearly applicable definition of a public accommodation articulated by our Supreme Court in a case addressing the contours of § 46a-64 but, instead, evaluated the plaintiff's claims solely within the federal framework.

We believe that the *Lansdowne Swim Club* factors are relevant only to the extent they tend to demonstrate that an establishment "has determined to eschew selectivity," or to indicate whether that establishment "has maintained a private relationship with its own constituency or a general relationship with the public at large." Id., 299–300. We expect that under different factual scenarios, the relevance of a particular factor could vary. In short, a court may consider the *Landsdowne Swim Club* factors but only insofar as they pertain to the overarching test for a public accommodation stated in *Quinnipiac Council, Boy Scouts of America, Inc.* Because the court's analysis was not so constrained, we conclude that it was improper.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.