******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES *v.* EDGE
FITNESS, LLC, ET AL.
(SC 20538)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the Public Accommodation Act (§ 46a-64 (a)), "[i]t shall be a
discriminatory practice . . . [t]o deny any person within the jurisdiction
of this state full and equal accommodations in any place of public
accommodation . . . because of . . . sex . . . [or] to discriminate,
segregate or separate on account of . . . sex . . . ."

Pursuant further to that act (§ 46a-64 (b) (1)), the provisions of § 46a-64
prohibiting sex discrimination "shall not apply to . . . separate bath-
rooms or locker rooms based on sex."

The plaintiff, the Commission on Human Rights and Opportunities, appealed
to the trial court from the decision of the commission's human rights
referee, who found that the defendants, E Co. and C Co., had not engaged
in discriminatory public accommodations practices by providing sepa-
rate women's only workout areas in their otherwise public fitness facili-
ties. The complainants, two members of the defendants' respective gyms
who both identified as male, filed complaints with the commission after
they experienced delays in completing their workouts because they had
to wait for other members to finish using the equipment in the coed
portions of the facilities. The human rights referee concluded that the
defendants did not violate § 46a-64 by maintaining women's only work-
out areas and dismissed their complaints. On appeal to the trial court,
that court recognized that a women's only workout area is neither a
bathroom nor a locker room but nonetheless concluded that the defen-
dants' provision of such areas did not violate the sex discrimination
provisions of the Public Accommodation Act because there was an
implied customer gender privacy exception encompassed within § 46a-
64 (b) (1). In so concluding, the court considered the privacy interests
underlying the bathroom and locker room exceptions, as well as the
burden that the elimination of women's only areas would place on
women of certain religious practices. The trial court observed that,
without an implied gender privacy exception, the provision of other
types of separate facilities, such as showers, dressing rooms and hospital
rooms, would constitute a violation of the act. Accordingly, the court
rendered judgment dismissing the commission's administrative appeal,
from which the commission appealed. *Held* that the trial court incor-
rectly concluded that § 46a-64 (b) (1) contains an implied gender privacy
exception that exempted the defendants' provision of women's only
workout areas from the act's general prohibition against sex discrimina-
tion, and, accordingly, this court reversed the trial court's judgment and
remanded the case with direction to render judgment sustaining the
commission's administrative appeal: it was undisputed that the defen-
dants' gyms are places of public accommodation and that their provision
of women's only workout areas constitutes a discriminatory practice
under the act unless subject to a statutory exception, and, because
women's only workout areas did not fit within the plain meaning of the
terms "bathroom" or "locker room," as gleaned from their dictionary
definitions, this court concluded that the exceptions set forth in § 46a-
64 (b) (1) plainly and unambiguously did not encompass women's only
workout areas; moreover, if the legislature had intended to include an
additional exception to the act's general ban on sex based discrimination
in public accommodations, it could have done so, as it did in the statute
(§ 46a-60 (b) (1)) providing for an exception to the general ban on sex
discrimination when sex constitutes a bona fide occupational qualifica-
tion for a position of employment, and interpreting § 46a-64 (b) (1) to
include an implied gender privacy exception would be inconsistent with
the maxim that remedial statutes, like the act, should be construed
liberally but that exceptions to remedial statutes should be construed

narrowly; furthermore, the legislative history indicated that the legislature had rejected a version of the act that exempted the provision of separate facilities for males and females "based on considerations of privacy and modesty" as being too broad and subjective, instead adopting the cabined exception limited to "separate bathrooms or locker rooms based on sex"; in addition, the fact that this court's construction of § 46a-64 may lead to results unintended by the legislature, as posited by the parties, the referee and the trial court with respect to lactation and dressing rooms, was not a reason to depart from the plain and unambiguous statutory text of the statute, and the sensitivity of the determination of where to limit antidiscrimination protections on the basis of sex rendered the issue uniquely well suited for consideration in the first instance by the legislature.

Argued May 5, 2021—officially released January 25, 2022*

*Procedural History*

Appeal from the decision of the plaintiff that the named defendant and the defendant Club Camel, Inc., Bloomfield, did not engage in discriminatory public accommodations practices, brought to the Superior Court in the judicial district of New Britain, where the case was tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiff appealed. *Reversed*; *judgment directed.*

*Michael E. Roberts*, human rights attorney, for the appellant (plaintiff).

*James F. Shea*, with whom was *Allison P. Dearington*, for the appellee (named defendant).

*Mario R. Borelli*, for the appellee (defendant Club Camel, Inc., Bloomfield).

*Kenneth J. Bartschi* filed a brief for the GLBTQ Legal Advocates & Defenders et al. as amici curiae.

*Kevin M. Barry* filed a brief for the Quinnipiac University School of Law Legal Clinic as amicus curiae.

*Erick M. Sandler* filed a brief for the Jewish Federation of Greater Hartford et al. as amici curiae.

*Dan Barrett* filed a brief for the American Civil Liberties Union of Connecticut as amicus curiae.

*Opinion*

ROBINSON, C. J. This appeal presents a significant question of first impression with respect to whether the Public Accommodation Act, General Statutes § 46a-64,[1] contains an implied customer gender privacy exception to its general prohibition against sex based discrimination.[2] The plaintiff, the Commission on Human Rights and Opportunities (commission), appeals[3] from the judgment of the trial court dismissing its administrative appeal from the decision of the commission's human rights referee (referee), who found that the defendants Edge Fitness, LLC (Edge Fitness) and Club Camel, Inc., Bloomfield, doing business as Club Fitness (Club Fitness),[4] did not engage in discriminatory public accommodations practices. On appeal, the commission claims that the trial court incorrectly concluded that women's only workout areas in otherwise public gyms did not violate § 46a-64 because that statute contains an implied customer gender privacy exception. We conclude that the exceptions to the general prohibition against discrimination on the basis of sex in public accommodations are limited to those expressly provided by the plain language of § 46a-64 and, therefore, that there is no implied customer gender privacy exception to the statute. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The complainants, Alex Chaplin and Daniel Brelsford, were members of the defendants' gyms, Club Fitness and Edge Fitness, respectively. Both individuals identify as males and used the larger coed portions of the facilities. While using equipment in the main workout areas, the complainants experienced slight delays in completing their workouts because they had to wait for other members to finish using that equipment. This led the complainants to believe that the defendants, by providing separate women's only fitness areas in their facilities, had discriminated against them on the basis of sex, and they filed complaints with the commission challenging the practice. The referee concluded that the defendants did not violate § 46a-64 by maintaining women's only workout areas and dismissed the complaints.

The commission filed an administrative appeal from the decision of the referee with the trial court pursuant to General Statutes § 4-183. In its memorandum of decision, the trial court first recognized that a women's only fitness area is neither a bathroom nor a locker room. The court then questioned whether "§ 46a-64 (b) (1) allow[s] for exceptions to the sex based antidiscrimination prohibitions in cases other than bathrooms or locker rooms [in which] the same gender privacy interests that allowed for the exceptions for bathrooms and locker rooms are in play." The trial court observed that, "unless the statute is read to include a gender privacy

exception similar to the express exception for bathrooms and locker rooms, it would be a violation to provide separate showers, dressing rooms and hospital rooms for men and women in public accommodations." The trial court further considered the burden that the elimination of women's only workout areas would place on women of certain religious practices. The trial court, therefore, concluded that "the provision of women's only exercise areas in fitness centers of public accommodation does not violate the sex based antidiscrimination provisions of . . . § 46a-64." Accordingly, the trial court rendered judgment dismissing the commission's administrative appeal. This appeal followed.[5] See footnote 3 of this opinion.

On appeal, the commission claims that the language of § 46a-64 (b) (1) is plain and unambiguous and does not contain a gender privacy exception to the general prohibition against sex discrimination. The commission asserts that a gender privacy exception is not a valid defense to an otherwise discriminatory sex based classification.[6] In response, the defendants argue that, because antidiscrimination statutes are to be construed broadly to effectuate their beneficent purpose, the remedial purpose of § 46a-64 is advanced by the defendants' provision of women's only workout areas. The defendants also contend that the commission's reading of the statute is so narrow that it would yield absurd results. We agree with the commission and conclude that the trial court's expansion of the exceptions in § 46a-64 (b) (1) to the general prohibition against sex discrimination was inconsistent with the plain language of the statute.

Whether the trial court correctly determined that there is an implied customer gender privacy exception encompassed within § 46a-64 (b) (1) is a question of statutory construction that presents a question of law, over which we exercise plenary review. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019). It is well settled that we follow the plain meaning rule in General Statutes § 1-2z in construing statutes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see, e.g., id., 45–46 (setting forth plain meaning rule).

In interpreting statutes, words and phrases not otherwise defined by the statutory scheme are construed according to their "commonly approved usage . . . ." General Statutes § 1-1 (a); see, e.g., *State* v. *Panek*, 328 Conn. 219, 227–28, 177 A.3d 1113 (2018). In determining the commonly approved usage of the statutory language at issue, we consult dictionary definitions. See, e.g., id., 229. It is well established that a statute is considered plain and unambiguous when "the meaning . . . is so strongly indicated or suggested by the [statutory] language . . . that . . . it appears to be *the* meaning and

appears to preclude any other likely meaning. . . . [I]f the text of the statute at issue . . . would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Emphasis in original; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 698 n.6, 258 A.3d 1268 (2021).

As required by § 1-2z, we first determine whether the statutory language is ambiguous. Section 46a-64 (a) provides in relevant part that it "shall be a discriminatory practice in violation of this section: (1) [t]o deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of . . . sex . . . [or] (2) to discriminate, segregate or separate on account of . . . sex . . . ." Section 46a-64 (b) (1) then sets forth the exceptions to the statute's general prohibition against discrimination based on sex, which it limits to "the rental of sleeping accommodations provided by associates and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex or . . . separate bathrooms or locker rooms based on sex." See footnote 1 of this opinion.

It is undisputed that the defendants' gyms are "place[s] of public accommodation" within the meaning of § 46a-64 (a) (1). It is also undisputed that the defendants' provision of women's only workout areas constitutes a "discriminatory practice"[7] in violation of that subsection unless it is subject to a statutory exception, which is the focus of our analysis in this appeal.

The legislature enacted the bathroom and locker room exceptions set forth in § 46a-64 (b) (1) as No. 94-238, § 4, of the 1994 Public Acts (P.A. 94-238). In determining the commonly approved usage of the terms "bathroom" and "locker room," we look to their dictionary definitions. See, e.g., *State* v. *Panek*, supra, 328 Conn. 229. Contemporary to the passage of the 1994 amendment to § 46a-64, "bathroom" was defined as "a room equipped for taking a bath or shower . . . toilet . . . ." Random House Unabridged Dictionary (2d Ed. 1993) p. 177. "Locker room" was defined as "a room containing lockers, as in a gymnasium, factory, or school, for changing clothes and for the storage and safekeeping of personal belongings." Id., p. 1128. The parties do not proffer alternative meanings for these terms or suggest that the women's only workout areas fit within the plain meaning of those definitions as a factual matter.[8] Accordingly, we conclude that the exceptions set forth in § 46a-64 (b) (1) plainly and unambiguously do not encompass the women's only workout areas for purposes of the § 1-2z analysis.

Because the women's only workout spaces do not fall under an express exception, the defendants ask us to interpret § 46a-64 (b) (1) to include a third, implicit

exception to the prohibition against sex based discrimination, namely, a broad gender privacy exception. The defendants argue that such an exception is implied by the bodily privacy interests that the enumerated exceptions protect and that the inclusion of a third exception would be consistent with other portions of the statutory scheme. The defendants further rely on General Statutes § 46a-60 (b) (1),[9] which provides for an exception to the general ban on sex discrimination in employment when sex constitutes a bona fide occupational qualification (BFOQ) for a position. The defendants ask us to read the statutes in relation to one another and to conclude that the inclusion of the BFOQ defense in the context of employment discrimination evidences a legislative intent to include an implied gender privacy exception to the ban on discrimination in public accommodations. We disagree with this reading of § 46a-64 (b) (1).

It is well established "that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 709, 998 A.2d 1 (2010). Declining to read a BFOQ like exception into § 46a-64 (b) (1) does not render it inconsistent with § 46a-60 (b) (1). Had the legislature intended to include a third exception to the general ban on sex based discrimination in public accommodations, it could have done so. Indeed, the legislature's inclusion of a BFOQ exception in § 46a-60 (b) (1) demonstrates that the legislature could have provided such an exception in the public accommodation statute but consciously elected not to do so. See, e.g., *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016) (common principle of statutory construction is that, when legislature expresses list of items, exclusion of particular item is deliberate); *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014) ("[i]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)). As this court stated more than thirty years ago, "[a] review of our labor legislation discloses that our General Statutes treat employment discrimination separately from public accommodation discrimination. We deem it especially significant that only the former statute contains an express exception for a 'bona fide occupational qualification or need' . . . [in concluding that] [o]ur public accommodation statute . . . gives no indication that it was intended to encompass the proffer of services within its definition of discriminatory accommodation practices. The absence of a statutory exception for a 'bona fide occupational qualification or need' in the text of [the public accommodation statute] is more consistent with a legislative intent to leave such practices to be regulated by statutes that address

employment discrimination rather than by statutes directed to discrimination in public accommodations." (Citations omitted.) *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, 204 Conn. 287, 302, 528 A.2d 352 (1987); see id., 302–303 (denying woman opportunity to serve as scoutmaster of Boy Scout troop did not deprive her of "accommodation" on basis of sex).

Declining to import a gender privacy exception into § 46a-64 is consistent with the maxim that "remedial statutes should be construed liberally in favor of those whom the law is intended to protect," but exceptions to those statutes "should be construed narrowly." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Dickal*, 305 Conn. 488, 502, 45 A.3d 627 (2012); see *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002) ("recogniz[ing] the balance that the legislature has struck between the state's dual interest" in broadly prohibiting sex discrimination and narrowly exempting small employers); *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 473–74, 673 A.2d 484 (1996) ("provisos and exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception and . . . those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established" (internal quotation marks omitted)). Particular caution is warranted in the construction of exceptions to antidiscrimination laws because a broad construction poses the risk of swallowing the rule. See, e.g., *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 788–89, 739 A.2d 238 (1999) (concluding that " 'insufficient income' " exception to Fair Housing Act under General Statutes § 46a-64c (b) (5) does not categorically exclude tenants receiving section 8 assistance but, instead, receives "[a] narrow construction . . . [that] affords a landlord an opportunity to determine whether, presumably for reasons extrinsic to the section 8 housing assistance calculations, a potential tenant lacks sufficient income to give the landlord reasonable assurance that the tenant's portion of the stipulated rental will be paid promptly and that the tenant will undertake to meet the other obligations implied in the tenancy").

In this vein, we address the argument of the defendants and interfaith amici; see footnote 5 of this opinion; that a conclusion that the statutory text plainly and unambiguously lacks a gender privacy exception will lead to absurd or bizarre results by eliminating other women's only spaces and impeding the religious freedom of women seeking to use those facilities.[10] They rely on the prediction of the referee and the trial court that, if the statute's exceptions were construed strictly, the provision of separate showers, dressing rooms, lac-

tation rooms, domestic violence shelters, and hospital rooms would constitute a violation of the statute. We disagree. First, although such facilities are not at issue in this appeal, it is not at all clear that they would not fall within the existing statutory exceptions for bathrooms, locker rooms, and sleeping accommodations, as interpreted using our rules of statutory construction. See General Statutes § 46a-64 (b) (1) and (2). Second, even if we were to assume, without deciding, that restricting the facilities identified by the referee and the trial court to women constitutes impermissible discrimination and that such a result is indeed absurd,[11] thus permitting resort to the legislative history of § 46a-64 (b) (1), that legislative history does not support the defendants' argument. See, e.g., *State* v. *Bischoff*, 337 Conn. 739, 746, 258 A.3d 14 (2021) ("[o]nly if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment" (internal quotation marks omitted)). Instead, it indicates that the legislature has rejected the concept of abstract notions of gender privacy in favor of a more narrowly cabined exception when warranted.

As we noted previously, the bathroom and locker room exception in § 46a-64 (b) (1) was enacted in 1994 as § 4 of P.A. 94-238, which was first introduced as Substitute House Bill No. 5606. In his written testimony before the Judiciary Committee in support of Substitute House Bill No. 5606,[12] then Attorney General Richard Blumenthal described the bill as intended to "clarif[y] that the prohibition against discrimination based on sex does not mean that places of public accommodations such as gyms, bars, and restaurants cannot provide separate bathroom and locker room facilities. *Although this is common sense, it is not clear that such an exception exists in the current statute.*" (Emphasis added.) Written testimony from Richard Blumenthal, Attorney General, submitted to the Joint Committee on Judiciary, Connecticut General Assembly (March 11, 1994);[13] see 37 H.R. Proc., Pt. 20, 1994 Sess., p. 7240, remarks of Representative Richard D. Tulisano ("this section . . . makes it clear that it's not illegal under the public accommodations act to have separate bathrooms in locker rooms for men and women"). The originally raised House Bill No. 5606 was expressly intended to allow "the provision of separate facilities for males and females where privacy concerns exist"; it would have exempted from the act "the provision of bathroom and locker room facilities *based on considerations of privacy and modesty.*" (Emphasis added.) Raised Bill No. 5606, 1994 Sess., § 1. During testimony on House Bill No. 5606 before the Judiciary Committee, Commission Counsel Philip A. Murphy, Jr., representing the commission, criticized the drafting of this proposed exception for its potential to "be interpreted too broadly and . . .

[to] cause needless litigation." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1994 Sess., p. 513. In his written testimony, Murphy urged that the "section [of the raised bill] be deleted or substantially rewritten," arguing that "the exception is so broad that it will result in the exception swallowing the discriminatory practice. Thus a public accommodation that wishes to serve only men can decline to provide women's restrooms or locker rooms and claim that it does not have to serve women because of 'privacy and modesty' concerns." Id., p. 591. Subsequently, the substitute bill, which was ultimately enacted as Public Act No. 94-238, addressed this criticism by eliminating the potentially problematic "considerations of privacy and modesty" language in favor of the more simple exception for "separate bathrooms or locker rooms based on sex." Substitute House Bill No. 5606, 1994 Sess., § 1. Our legislature elected, therefore, to address an application of the sex discrimination prohibition that might be inconsistent with "common sense," by using simpler terms, rather than qualifying the prohibition with reference to the subjective morass of "modesty" and "privacy" urged by the defendants and the amici. See *In re Valerie D.*, 223 Conn. 492, 518 n.19, 523, 613 A.2d 748 (1992) (noting that court ordinarily does not consider legislature's failure to act but considering "limited circumstances" of legislature's rejection of one bill and immediate adoption of competing bill "in its stead" as evidence of legislative intent); see also *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 519 n.10,     A.3d.     (2021).

Consistent with the concerns of the commission in advocating for the enactment of a bathroom and locker room exception that did not include vague language allowing for the "consideration of privacy and modesty," we observe that a reading of § 46b-64 (b) (1) to imply a gender privacy exception, although presumably to benefit women, could also negatively affect the rights of women in a different way. As discussed in the amicus briefs filed by the Quinnipiac University School of Law Legal Clinic, the American Civil Liberties Union of Connecticut, and the GLBTQ Legal Advocates & Defenders, Lambda Legal Education and Defense Fund, Inc., and the Connecticut Transadvocacy Coalition, such an exception could be invoked to exclude women based on the privacy interests of *men* and could justify discrimination against transgender individuals because some customers, "due to modesty, find it uncomfortable" to be around such people. *Livingwell (North), Inc.* v. *Pennsylvania Human Relations Commission*, 147 Pa. Commw. 116, 121, 606 A.2d 1287, appeal denied, 533 Pa. 611, 618 A.2d 401 (1992); see id., 121–22 ("The privacy interest expressed involves situations [in which] the customers, due to modesty, find it uncomfortable to have the opposite sex present because of the physical condition in which they find themselves or the physical activity in which they are engaged as customers at the

business entity. These customers would be embarrassed or humiliated if cared for or observed by members of the opposite sex."). Such a result of potentially limiting the access of women and transgender people access to spaces on the basis of the privacy interests of men or the "moral comfort" of customers defeats the purpose of our state's antidiscrimination legislation. See, e.g., *Corcoran* v. *German Social Society Frohsinn, Inc.*, 99 Conn. App. 839, 843–44, 916 A.2d 70 (noting legislative intent to broaden rather than limit scope of § 46a-64), cert. denied, 282 Conn. 910, 922 A.2d 1098 (2007).

Nevertheless, we acknowledge that our analysis of the plain and unambiguous statutory text of § 46a-64 may lead to a result that might well have been unintended by the legislature, including with respect to its application in hypothetical scenarios involving lactation rooms or dressing rooms, as posited by the defendants, the referee, and the trial court. See footnotes 10 and 11 of this opinion and accompanying text. As the United States Supreme Court recently noted in construing the language "because of sex" in Title VII of the Civil Rights Act of 1964 to apply to employment discrimination against homosexual or transgender persons, this effect is not a reason to depart from the plain and unambiguous statutory text of § 46a-64. See *Bostock* v. *Clayton County*, U.S. , 140 S. Ct. 1731, 1737, 207 L. Ed. 2d 218 (2020) ("Those who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result. Likely, they weren't thinking about many of the [Civil Rights] Act's consequences that have become apparent over the years, including its prohibition against discrimination on the basis of motherhood or its ban on the sexual harassment of male employees. But the limits of the drafters' imagination supply no reason to ignore the law's demands."); see also id., 1749 ("the fact that [a statute] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates [the] breadth of a legislative command" (internal quotation marks omitted)). The purpose of the Public Accommodation Act is to provide all sexes "full and equal accommodations in any place of public accommodation . . . ." General Statutes § 46a-64 (a) (1). This purpose is not frustrated by a broad reading of the statutory language of § 46a-64 (a) or a narrow construction of the exceptions provided under subsection (b) of the statute.

Thus, the sensitivity of the determination of where to limit antidiscrimination protections, along with evolving contemporary understandings of the terms "gender" and "sex"; see footnote 2 of this opinion; renders this issue uniquely well suited for consideration in the first instance by the legislature, which is the policy-making branch of our government. See, e.g., *Thibodeau* v. *Design Group One Architects, LLC*, supra, 260 Conn. 715 (recognizing policy-making role of legis-

lature in context of sex discrimination); see also *Fay* v. *Merrill*, 338 Conn. 1, 51–52, 256 A.3d 622 (2021) ("[g]iven the reasonable policy concerns that support the parties' respective state constitutional arguments, in interpreting our state's constitution, we must defer to the legislature's primary responsibility in pronouncing the public policy of our state" (internal quotation marks omitted)); *State* v. *Lockhart*, 298 Conn. 537, 574, 4 A.3d 1176 (2010) (The court declined to adopt a state constitutional rule requiring the recording of custodial interrogations because, although the rule would likely be beneficial, "[d]etermining [its] parameters . . . requires weighing competing public policies and evaluating a wide variety of possible rules. . . . In [the court's] view, such determinations are often made by a legislative body because it is in a better position to evaluate the competing policy interests at play . . . ." (Citation omitted.)).

We therefore conclude that the defendants' gyms are places of public accommodation that have denied the complainants full and equal accommodations on the basis of their sex. We further conclude that that denial does not fall within an exception expressly provided for in § 46a-64 (b) (1), rendering the practice of maintaining women's only workout areas within an otherwise public gym a violation of the Public Accommodation Act.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the commission's administrative appeal.

In this opinion the other justices concurred.

* January 25, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 46a-64 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section: (1) To deny any person within the jurisdiction of this state full and equal accommodations in any place of public accommodation, resort or amusement because of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability, physical disability, including, but not limited to, blindness or deafness, or status as a veteran, of the applicant, subject only to the conditions and limitations established by law and applicable alike to all persons; (2) to discriminate, segregate or separate on account of race, creed, color, national origin, ancestry, sex, gender identity or expression, marital status, age, lawful source of income, intellectual disability, mental disability, learning disability, physical disability, including, but not limited to, blindness or deafness, or status as a veteran . . . .

"(b) (1) The provisions of this section with respect to the prohibition of sex discrimination shall not apply to (A) the rental of sleeping accommodations provided by associations and organizations which rent all such sleeping accommodations on a temporary or permanent basis for the exclusive use of persons of the same sex or (B) separate bathrooms or locker rooms based on sex. . . ."

[2] For purposes of this opinion, we describe the claim at issue as "sex discrimination" because that is the nature of the claim as raised and described by the complainants. This description is consistent with this court's general practice of accepting the parties' characterization of the nature of the discrimination at issue. See, e.g., *Spiotti* v. *Wolcott*, 326 Conn. 190, 193, 163 A.3d 46 (2017) (considering complainant's allegations of sex discrimination). We do, however, recognize that the terms "sex" and "gender" are not specifically defined by the statutory scheme and that the understanding of them has evolved over time. See, e.g., R. Oliveri, "Sexual Orientation and Gender Identity Discrimination Claims Under the Fair Housing Act

After *Bostock* v. *Clayton County*," 69 U. Kan. L. Rev. 409, 423–25 (2021). Resolution of this appeal does not, however, require us to delve further into the definitions of the terms "sex" or "gender," as used in the statutory scheme.

[3] The commission appealed from the judgment of the trial court to the Appellate Court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[4] "Due to unusual procedures applicable to proceedings before the commission, in this administrative appeal, the commission is named as both a plaintiff (in its own capacity) and as a defendant (in its capacity as the agency under which the . . . referee issued the decision from which the commission appealed). See General Statutes § 46a-94a." *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 157 n.1, 140 A.3d 190 (2016). Likewise, the complainants before the commission, Alex Chaplin and Daniel Brelsford, were named as defendants in the administrative appeal, but they did not participate therein. Accordingly, unless otherwise indicated, all references herein to the defendants are to Edge Fitness and Club Fitness, collectively.

[5] We note that, on March 2, 2021, we invited amici curiae to file briefs to address the following question: "In this administrative appeal, did the trial court and the [referee] properly determine that the provision of [women's] only workout areas by the defendant gyms did not violate . . . § 46a-64 (a) and its prohibition against sex discrimination in public accommodations?"

The following amici curiae accepted our invitation and filed briefs: (1) the Jewish Federation of Greater Hartford, the Muslim Coalition of Connecticut, and other religious organizations (collectively, interfaith amici); (2) the Quinnipiac University School of Law Legal Clinic; (3) the GLBTQ Legal Advocates & Defenders, Lambda Legal Education and Defense Fund, Inc., and the Connecticut Transadvocacy Coalition; and (4) the American Civil Liberties Union of Connecticut. We are grateful to the amici for their thoughtful advocacy in response to our invitation for briefs.

[6] We note that the commission also argues that Edge Fitness failed to plead the customer gender privacy exception before the referee and, therefore, waived the defense. We disagree. As the trial court observed in rejecting this claim, (1) "these matters were consolidated and tried as one matter," (2) "the formal requirements of pleading do not apply in administrative proceedings," (3) "these two issues were in fact specifically raised at the hearing, tried, and reflected in the [referee's] decision," (4) "issues such as the appropriateness of pleadings and evidentiary rulings in an administrative [proceeding] are reviewed on appeal . . . on an abuse of discretion basis," (5) "the issue presented in this matter is an important issue that has ramifications beyond the parties," and (6) "issues such as gender privacy and religious rights are legal principles that are naturally intertwined with a defense against the discrimination alleged." See generally *Presidential Village, LLC* v. *Phillips*, 325 Conn. 394, 412 n.15, 158 A.3d 772 (2017) ("[t]he fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway" (internal quotation marks omitted)). We therefore agree with the trial court's conclusion that Edge Fitness did not waive the special defense, which was raised and argued during the administrative proceeding, because the commission was on notice of it.

[7] We note that, for purposes of the Public Accommodation Act, the legislature defines the term "discrimination" as "includ[ing] segregation and separation . . . ." General Statutes § 46a-51 (6); see also General Statutes § 46a-51 (8) (defining "discriminatory practice" as, inter alia, "a violation of" § 46a-64). The statutory scheme does not, however, define the terms "segregate," "segregation," "separate," or "separation." Looking to the dictionary for the common usage of those terms; see, e.g., *State* v. *Panek*, supra, 328 Conn. 229; we observe that Merriam Webster's Collegiate Dictionary defines the term "segregate" as "to separate or set apart from others or from the general mass: isolate . . . ." Merriam Webster's Collegiate Dictionary (10th Ed. 1993) p. 1058. Similarly, the term "segregation" refers to the "act or process of separation"; Black's Law Dictionary (6th Ed. 1990) p. 1358; or to "the separation or isolation of a race, class, or ethnic group by . . . divided educational facilities, or other discriminatory means . . . ." Webster's Third New International Dictionary (1961) p. 2057; accord Merriam Webster's Collegiate Dictionary, supra, p. 1058; see also *Sheff* v. *O'Neill*, 238 Conn. 1, 28 and n.31, 678 A.2d 1267 (1996) (similarly defining term "segregation," as used in article first, § 20, of state constitution). The term "separate" is defined as "set or kept apart," "not shared with another: INDIVIDUAL,

SINGLE," "AUTONOMOUS, INDEPENDENT," and "DISTINCT, DIFFER-ENT . . . ." Webster's Third New International Dictionary, supra, p. 2069; see also Merriam Webster's Collegiate Dictionary, supra, p. 1067 (defining "separate" as "set or kept apart" and "existing by itself"). These definitions plainly and unambiguously prohibit, without qualification, any isolation, separation or keeping apart "on account of sex," within a "public accommodation," and do not by themselves account for isolation, separation or keeping apart to protect or advantage a class of people that might be deemed to need or deserve protection or advantage, as the defendants argue with respect to the salutatory effects of women's only fitness facilities. Cf. General Statutes § 46a-64 (b) (2) (prohibition on age discrimination "shall not apply to minors or to special discount or other public or private programs to assist persons sixty years of age and older").

[8] We note that it is undisputed that the women's only workout areas at issue in this appeal do not fall within the plain meaning of the statutory terms "bathroom" or "locker room." More specifically, the record indicates that the women's only workout areas in each facility are separated from the larger portions of the gyms by doors with blinds and branding, as well as by walls without windows. The women's only areas are small relative to the rest of the facilities and, therefore, contain a lesser amount of the same equipment. There is no indication in the record that either of the women's only workout areas at issue contain showers, toilets, lockers, or any other feature associated with a bathroom or locker room.

[9] General Statutes § 46a-60 (b) (1) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."

[10] We note that no constitutional claim has been raised in this appeal. Thus, we do not consider the implications that § 46a-64 may have in relation to constitutional provisions and statutory safeguards such as the Connecticut Act Concerning Religious Freedom. See General Statutes § 52-571b. We leave these questions, including any gloss necessary to save § 46a-64 (a) from constitutional jeopardy, for another day, in a case that squarely presents them. See *Bostock* v. *Clayton County*,    U.S.    , 140 S. Ct. 1731, 1753–54, 207 L. Ed. 2d 218 (2020) (declining to address "[the employers'] fear that complying with Title VII's requirement [as to not discriminating against homosexual or transgender persons] may require some employers to violate their religious convictions" because "how [the] doctrines protecting religious liberty [namely, the first amendment and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq.] interact with Title VII [is a question] for future cases" given lack of religious liberty claim); see also *Fay* v. *Merrill*, 338 Conn. 1, 21 n.18, 256 A.3d 622 (2021) (noting "the general rule that [c]onstitutional issues are not considered unless absolutely necessary to the decision of a case" (internal quotation marks omitted)).

[11] We may consider hypothetical scenarios beyond the facts of the case before us in determining whether a construction of the plain language of a statute will lead to an absurd result. See, e.g., *State* v. *Brown*, 310 Conn. 693, 708–709, 80 A.3d 878 (2013) (determining that interpretation of special parole statute created absurd results on basis of hypothetical factual scenarios ); *State* v. *Gelormino*, 291 Conn. 373, 383–84, 968 A.2d 379 (2009) (considering but rejecting defendant's argument that plain and unambiguous language of mandatory minimum sentencing statute yielded absurd result when considered in context of hypothetical fact patterns).

[12] "[I]t is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation. . . . This is because legislation is a purposive act . . . and, therefore, identifying the particular problem that the legislature sought to resolve helps to identify the purpose or purposes for which the legislature used the language in question." (Internal quotation marks omitted.) *In re Elianah T.-T.*, 326 Conn. 614, 625–26 n.10, 165 A.3d 1236 (2017); see, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 314–15, 819 A.2d 260 (2003).

[13] We note that the written testimony of then Attorney General Blumenthal is not contained in the printed record of the Joint Standing Committee Hearings but is included in the legislative bill file available in the Connecticut State Library.